UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| TYRELL JACKSON and RANDALL CHAPMAN**,** on behalf of themselves and on behalf of a class of persons similarly situated, and MABLE ESTES, on behalf of herself and on behalf of a class of persons similarly situated; | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 13-cv-2504 EFM/JPO |
| DONALD ASH, in his official capacity as Sheriff for Wyandotte County, Kansas, | ) ) ) | **CLASS ACTION** |
| Defendant. | ) ) | |

CLASS ACTION COMPLAINT

Plaintiffs Tyrell Jackson, Randall Chapman, and Mabel Estes, all on behalf of themselves and all others similarly situated, sue defendant Donald Ash ("Ash") in his official capacity as Sheriff for Wyandotte County, Kansas, and allege as follows:

INTRODUCTION

1.    Plaintiffs challenge defendant's policy and practice ("Postcard-Only Mail Policy") of forbidding inmates of the Wyandotte County Adult Detention Center (the "Jail") and their parents, children, spouses, relatives, friends and other correspondents from sending letters enclosed in envelopes to and from the Jail.  Instead, Jail inmates and their outside correspondents must write all of their correspondences on postcards no larger than five (5) inches by seven (7) inches. The only exception to this Postcard-Only Mail Policy applies to "Official Mail," which the policy defines as mail to and from attorneys, the courts, officials of the confining authority, state and local chief executive officers, administrators of grievance systems, members of the

paroling authority and public officials, and local, state and federal government correspondence. This policy impermissibly restricts the ability of inmates and their outside correspondents from exercising their rights to communicate with correspondents in writing, in violation of the First and Fourteenth Amendments to the United States Constitution.

2.      Plaintiffs ask this court to enjoin the Postcard-Only Mail Policy and declare that it violates their constitutional rights.

JURISDICTION AND VENUE

3.      Plaintiffs bring this action pursuant to 42 U.S.C. §1983 for violations of civil rights under the First and Fourteenth Amendments to the United States Constitution.

4.      This court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) (civil rights).

5.      Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b).

PARTIES

6.      Plaintiff Tyrell Jackson ("Jackson") is a Jail inmate.  He was booked into the Jail as an inmate on or about May 17, 2012.  As set forth more fully below, plaintiff Jackson has been, and continues to be, deprived of constitutional rights as a result of the defendant's Postcard-Only Mail Policy.

7.      Plaintiff Randall Chapman ("Chapman") is a Jail inmate.  He was booked into the Jail as an inmate on or about March 13, 2013.  As set forth more fully below, plaintiff Chapman has been, and continues to be, deprived of constitutional rights as a result of the defendant's Postcard-Only Mail Policy.

8.      Mabel Estes ("Estes") is a private citizen who resides in Wyandotte County in the City of Kansas City, Kansas.  Plaintiff Estes is the girlfriend of plaintiff Chapman.  As set forth

more fully below, plaintiff Estes has been, and continues to be, deprived of constitutional rights as a result of the defendant's Postcard-Only Mail Policy.

9.      Tyrell Jackson and Randall Chapman and the class of similarly-situated inmates in the Jail shall be referred to collectively as "Jail Inmate Plaintiffs."

10.     Mabel Estes and the class of similarly-situated outside correspondents of Jail inmates shall be referred to collectively as "Outside Correspondent Plaintiffs."

11.     Defendant Donald Ash is now, and at all material times has been, the Sheriff of Wyandotte County, Kansas.  As Wyandotte County Sheriff, defendant is charged with the care and custody of inmates at the Jail.  Defendant Ash exercises overall responsibility for the policies and practices of the Jail, including the Postcard-Only Mail Policy.  Plaintiffs sue defendant Ash in his official capacity for injunctive and declaratory relief and attorneys fees and costs.

12.     Defendant Ash at all times relevant hereto was acting and continues to act under color of law.

13.     The jail administrator, supervisors, correction officers, deputies, and other staff persons who are responsible for implementing and enforcing the Jail's Postcard-Only Mail Policy are agents and employees of defendant Ash.

GENERAL ALLEGATIONS

14.     The Jail is located in Kansas City, Kansas.  It houses convicted prisoners, pretrial detainees, and civilly committed individuals.  It has a capacity to house 327 inmates, including 289 male inmates and 38 female inmates.

15.     Effective on or about June 9, 2009, defendant Ash instituted a policy that required all outgoing and incoming mail, except legal or privileged mail, sent by or to a Jail inmate to be written on a postcard (hereinafter "Postcard-Only Mail Policy").  Only mail to or from attorneys,

courts, officials of the confining authority, state and local chief executive officers, administrators of grievance systems, members of the paroling authority, public officials, and local, state and federal governments is considered legal or privileged mail ("Privileged Mail").

16.     Plaintiff Tyrell Jackson has been, and continues to be, deprived of constitutional rights as a result of the Postcard-Only Mail Policy:

(a)     Plaintiff Jackson would like to exchange letters with his family and friends, but cannot do so because of defendant's Postcard-Only Mail Policy.

(b)     Plaintiff Jackson would like to communicate with his friends and family about a wide variety of private subjects, including but not limited to issues dealing with family and romantic relationships, health and medical treatment, and finances.  In particular, plaintiff Jackson would like to be able to communicate in the form of letters in order to maintain and further develop his relationships with his four children.

(c)     Prior to implementation of the Postcard-Only Mail Policy, plaintiff Jackson regularly wrote numerous letters to family members, including his mother, girlfriend, and four children.   In these letters, plaintiff Jackson would discuss and share personal information about his health and finances with his correspondents.

(d)     As a result of defendant's Postcard-Only Mail Policy, however, plaintiff Jackson may no longer send these personal letters. Though he would like to continue discussing these sensitive topics with his correspondents, he can no longer include this information in messages because on postcards they may be easily read by a host of people once they leave the Jail.  Additionally, he must now express all of his thoughts and messages in an abbreviated and incomplete form as there is insufficient room on the postcard to fully develop and communicate

his thoughts and ideas.  As a result, plaintiff Jackson now sends fewer pieces of mail and is no longer able to fully discuss his thoughts, feelings and ideas.

(e)     Because his family and friends cannot often visit him and because of the expense of telephone calls, mail correspondence is the best way for him to stay in contact with his family and friends.

17.     Randall Chapman has been, and continues to be, deprived of his constitutional rights as a result of the Postcard-Only Mail Policy:

(a)     Plaintiff Chapman would like to send letters immediately to his mother and girlfriend, Mabel Estes, but cannot do so because of defendant's Postcard-Only Mail Policy.

(b)     Plaintiff Chapman has a serious mental illness and takes powerful medications to control the symptoms of that illness.  He would like to share personal and private information, including medical, financial, and legal information, with his correspondents.

(c)     Prior to implementation of the Postcard-Only Mail Policy, plaintiff Chapman regularly wrote numerous letters to family members, including his mother and girlfriend.  In these letters, plaintiff Chapman would discuss and share personal information about his health and finances with his correspondents.

(d)     As a result of defendant's Postcard-Only Mail Policy, however, plaintiff Chapman may no longer send these personal letters. Though he would like to continue discussing these sensitive topics with his correspondents, he can no longer include such information on postcards because they may be easily read by a host of people once they leave the Jail.  Additionally, he must now express all of his thoughts and messages in an abbreviated and incomplete form as there is insufficient room on the postcard to fully develop and communicate

5

his thoughts and ideas.  As a result, plaintiff Chapman now sends fewer pieces of mail and is no longer able to fully discuss his thoughts, feelings and ideas.

(e)     Because his family and friends cannot often visit him and because of the expense of telephone calls, mail correspondence is the best way for plaintiff Chapman to stay in contact with his family and friends.

18.     Plaintiff Estes has been, and continues to be, deprived of her constitutional rights as a result of the Postcard-Only Mail Policy:

(a)     Plaintiff Estes would like to send letters immediately to her boyfriend, plaintiff Chapman, but cannot do so because of defendant's Postcard-Only Mail Policy.

(b)     Plaintiff Estes would like to correspond with plaintiff Chapman regarding such private and sensitive matters as family matters, personal relationships, romantic thoughts, health care and conditions, and financial matters.

(c)     As a result of defendant's Postcard-Only Mail Policy, however, plaintiff Estes may no longer send these personal letters. Though she would like to continue discussing these sensitive topics with plaintiff Chapman, she can no longer do so because of the restrictions imposed by the Postcard-Only Mail Policy on privacy and space.  Additionally, she must now express all of her thoughts and messages in an abbreviated and incomplete form as there is insufficient room on the postcard to fully develop and communicate her thoughts and ideas.  As a result, plaintiff Estes now sends fewer pieces of mail and is no longer able to fully discuss her thoughts, feelings and ideas..

(d)     Although plaintiff Estes does occasionally visit plaintiff Chapman, visitation is not an adequate substitute for written communications about these private and sensitive matters, as more fully set forth below.

(e)     Moreover, the Jail's rules prohibit Estes from placing a telephone call to Chapman.

(f)     Because of these limitations on visitation and telephone calls, mail correspondence is the best way for plaintiff Estes to stay in contact with plaintiff Chapman.

19.     All Jail inmates are in the custody and under the control of defendant Ash.  As Jail detainees, the Jail Inmate Plaintiffs remain subject to the policies, practices, and customs of defendant Ash.

20.     Before defendant Ash instituted the Postcard-Only Mail Policy, Jail inmates freely sent letters consisting of one or more sheets of paper enclosed in an envelope to correspondents outside the jail.  Inmates enclosed outgoing letters in unsealed, open envelopes and then placed those envelopes in the mailbox in their pods.  An assigned Sheriff's deputy would collect the non-privileged outgoing mail from the mailboxes in the pods and would read or scan the letters for content that violated the Jail's mail policy.  After reading or scanning the outgoing letter mail, the deputies would seal the envelope and place it in the possession of the United States Postal Service.

21.     Similarly, before defendant Ash adopted the Postcard-Only Mail Policy, outside correspondents freely sent letters consisting of one or more sheets of paper enclosed in an envelope to inmate correspondents inside the jail, and these letters were transmitted to Jail inmates without incident..

22.     Now, defendant Ash and those acting under his authority will not transmit to an inmate or an outside correspondent mail that does not conform to the Postcard-Only Mail Policy. Under that policy, for example, Martin Luther King Jr. could not have sent the now famous letter

he sent from the Birmingham Jail on April 16, 1963, to his fellow clergymen.  Nor could the Apostle Paul have sent his Epistles to his fellow Christians while imprisoned by the Romans.

23.    Under the Postcard-Only Mail Policy, inmates may obtain postcards from Jail officials.  Jail officials will give indigent inmates two postcards per week as part of the weekly indigent supply packet, for which the Jail charges indigent inmates $3.00 per week.  Alternatively, Jail inmates must purchase postcards from the Jail's commissary.

24.    Defendant Ash requires that the front of the postcard contain only the addressee's name and address, the sender's name and return address, and postage.  Only the back of the postcard may contain a substantive message.

25.    The Postcard-Only Mail Policy is set forth in the Detainee Mail Policy (No. F-115), which was originally adopted on October 8, 2008, and subsequently revised on June 9, 2009 and December 2, 2010.  On information and belief, Postcard-Only Mail Policy was added as part of the June 9, 2009 revision.

26.    Jail inmates and their friends and family have few alternatives by which to communicate privately and freely with family, friends, and other loved ones:

(a)    Telephone calls are an inadequate substitute for letters.

(1)    Pursuant to Jail policy, friends and family members cannot telephone inmates at the Jail.

(2)    While Jail inmates are permitted to call out to friends and family members, the cost of
such calls are prohibitively expensive. Telephone calls from Jail inmates in the housing areas cost $7.00 for a fifteen (15) minute call.

(3)     Even when an Jail inmate can afford to make such phone calls, the manner in which these calls are conducted prevents the discussion of sensitive and/or personal topics, as fellow Jail inmates may easily overhear these telephone calls.

(b)     Jail visits are an inadequate substitute for letters.

(1)     The Jail does not permit contact visitation.  Instead, Jail inmates are separated from their visitors by glass and must talk to visitors over a telephone system.  In many pods, the telephones do not work properly so that it is often difficult or impossible to hear what the other party is saying.  Moreover, there are no privacy booths for visitation so that other inmates or visitors may overhear conversations.

(2)     Family and friends may only visit Jail inmates during a specific one-hour time period once a week, which prevents many friends and family with a conflict during this time period from visiting at all.

(3)     Friends and family who do not live near the Jail or in another state cannot easily visit Jail inmates.

(c)     Therefore, for all these reasons, mail correspondence for many Jail inmates and their family and friends is the most feasible, practical, and private way to communicate and maintain a relationship.

27.     The Postcard-Only Mail Policy impermissibly curtails the ability of Jail inmates and their outside correspondents to send and receive private and/or sensitive expressions and

9

communications.  The Postcard-Only Mail Policy also prevents Jail inmates and their outside correspondents from fully expressing their thoughts.  Instead, Jail inmates and their outside correspondents must express these messages in an abbreviated and incomplete form as there is insufficient room on the postcard to fully develop and communicate the inmates' thoughts and ideas.  The Postcard-Only Mail Policy prevents inmates and their friends and family members from receiving these fully developed and complete messages.

28.    In addition, the postcards required by defendant' Postcard-Only Mail Policy expose the content of the inmates' and their correspondents' communications to anyone who handles, processes, or views the postcards in route, both within the Jail and outside the facility. Prior to the Postcard-Only Mail Policy, Jail inmates, civil committees, and outside correspondents would regularly write letters to family and friends that contained sensitive information, including medical, spiritual, intimate, and financial information.  Because these letters were enclosed in envelopes and only subject to review by a Sheriff's deputy, the writers felt confident that this sensitive information would not be exposed for others to see, including postal carriers.  The Postcard-Only Mail Policy has forced Jail inmates, civil committees, and outside correspondents to either abandon including sensitive information in their non-privileged correspondence or risk divulging confidential, sensitive information to unknown third-parties who can easily intercept these messages on postcards.  Including sensitive financial information on a postcard increases the chance that these writers may become a victim of identity theft or fraud.

29.    The defendant's Postcard-Only Mail Policy has and continues to inhibit, infringe, limit, chill, suppress, and interfere with the Plaintiffs' constitutionally-protected communications.

30.     The plaintiffs have suffered and will continue to suffer an injury as a result of the defendant's Postcard-Only Mail Policy.  The Postcard-Only Mail Policy infringes on plaintiffs' constitutional right of free speech to communicate in a complete and meaningful way and to express themselves fully.

31.     Defendant Ash has acted under color of state law to deprive plaintiffs of their constitutional rights.  Plaintiffs face a real and immediate threat of irreparable injury as a result of these actions and the existence, operation, and threat of enforcement of the defendant's Postcard-Only Mail Policy.

CLASS ACTION ALLEGATIONS

32.     Plaintiffs bring this action on behalf of themselves and all others similarly situated, pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure.

33.     The individual Jail Inmate Plaintiffs seek to represent a class defined as "all current and future detainees in the Wyandotte County Adult Detention Center who are subject to or affected by the Postcard-Only Mail Policy."

34.     The individual Outside Correspondent Plaintiff seeks to represent a class defined as "all current and future outside correspondents who wish to write letters to inmates in the Wyandotte County Adult Detention Center and who are subject to or affected by the Postcard-Only Mail Policy."

35.     The proposed classes are so numerous and so fluid that joinder of all members is impracticable and uneconomical. With thousands of persons admitted to the Jail annually and an average Jail inmate population of roughly 327 persons, the approximate size of the class consists of thousands of inmates and their correspondents, and consists of at least 300 persons at any given time.

11

36.     There are questions of law and fact common to the members of each plaintiff class.  These common questions of law and fact include, but are not limited to, the following:

    a)  the scope and nature of defendant's Postcard-Only Mail Policy;

    b)  the scope, criteria, and process for invoking the alleged "privileged mail" exception to defendant's Postcard-Only Mail Policy;

    c)  the scope and nature of defendant's interests and/or justifications in instituting and maintaining the Postcard-Only Mail Policy;

    d)  whether the application of defendant's Postcard-Only Mail Policy violates the rights of the members of the Jail Inmate Class under the First and Fourteenth Amendments to the United States Constitution; and

    e)  whether the application of defendant's Postcard-Only Mail Policy violates the rights of the members of the Outside Correspondents Class under the First and Fourteenth Amendments to the U.S. Constitution.

37.     The claims of the class representatives are typical of the claims of the members of each class.  The class representatives have suffered injuries similar in kind and degree to injuries suffered by the members of each class.  The defendant has acted the same with respect to the class representative and all class members.  The class representatives make the same claims and seek the same relief for themselves and for all class members.

38.     The named class representatives will fairly and adequately protect the interests of each class.  The named class representatives have no interest that is now or may be potentially antagonistic to the interests of any of the classes.  Plaintiffs understand the duties and responsibilities of serving as class representatives.  Plaintiffs have no conflicts, and have retained experienced class counsel to represent each class.

39.     Defendants have acted or refused to act on grounds generally applicable to the members of each class, thereby making appropriate final injunctive and declaratory relief with respect to each class as a whole.

SUPPRESSION OF PROTECTED SPEECH

40.     Plaintiffs reallege and incorporate by reference all of the preceding paragraphs in this complaint.

41.     The defendant has deprived, and continues to deprive, Jail Inmate Plaintiffs and Outside Correspondent Plaintiffs of their rights under the First Amendment to the United States Constitution, which are secured through the Fourteenth Amendment.  The defendant's Postcard-Only Mail Policy is the cause in fact of the constitutional violations.

42.     Absent intervention by this court the named plaintiffs and the members of each plaintiff class will suffer injury as a result of the defendant's unconstitutional practices.

43.     Unless restrained by this court, defendant will continue to enforce the Postcard-Only Mail Policy.  Named plaintiffs and the members of each plaintiff class have been and will continue to be irreparably harmed by defendant's denial of plaintiffs' fundamental constitutional right to free speech.

44.     Named plaintiffs and the members of each plaintiff class have no adequate remedy at law for the denial of their fundamental constitutional rights.

45.     In depriving plaintiffs and the members of each plaintiff class of these rights, defendant acted under color of state law.  This deprivation under color of state law is actionable under and may be redressed pursuant to 42 U.S.C. § 1983.

RELIEF REQUESTED

WHEREFORE, plaintiffs respectfully request the following relief:

A.      An order certifying this matter as a class action pursuant to Rule 23, Fed. R. Civ. Pro.;

B.      An order declaring defendant's Postcard-Only Mail Policy to be in violation of the First and Fourteenth Amendments to the U.S. Constitution;

C.      An order permanently enjoining defendant and his officers, agents, affiliates, subsidiaries, servants, employees, successors, and all other persons or entities in active concert or privity or participation with him, from continuing the unlawful Postcard-Only Mail Policy or any other policy that limits incoming and outgoing mail to postcards, thus restoring the status quo that previously existed;

D.      An order requiring defendant to provide notice to all current Jail inmates and Jail officials implementing the defendant's policies that the Postcard-Only Mail Policy is terminated;

E.      An order permanently enjoining defendant and his officers, agents, affiliates, subsidiaries, servants, employees, successors, and all other persons or entities in active concert or privity or participation with him, from taking retaliatory action against plaintiffs for bringing this lawsuit;

F.      An award of reasonable attorneys' fees and costs incurred in connection with this action from defendants pursuant to 42 U.S.C. § 1988;

G.      An order retaining the court's jurisdiction of this matter to enforce the terms of the court's orders; and

H.      Such further and different relief as is just and proper or that is necessary to make plaintiffs whole.

Place of Trial & No Jury Demand

Pursuant to D. Kan. Rule 40.2, plaintiffs designate Kansas City as the place for trial.

Plaintiffs do not request a jury trial.

Respectfully Submitted,

/s/ Stephen Douglas Bonney
Stephen Douglas Bonney, KS Bar #12322
ACLU Foundation of Kansas
3601 Main Street
Kansas City, MO 64111
Tel. (816) 994-3311
Fax: (816) 756-0136
E-mail: dbonney@aclukswmo.org

and

Joshua A. Glickman, Esq.*
Kansas Bar No. 25889
Social Justice Law Collective, PL
P.O. Box 11563
Overland Park, KS 66207
Tel. (913) 213-3064
Fax: (866) 893-0416
Email: josh@sjlawcollective.com

*Admitted in Kansas and pending admission in the
U.S. District Court, District of Kansas

*Counsel for Plaintiffs*