IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TYRELL JACKSON and RANDALL
CHAPMAN, on behalf of themselves and all
others similarly situated, and MABEL
ESTES, on behalf of herself and on behalf of
a class of persons similarly situated,
         *Plaintiff,*

vs.

Case No. 13-CV-2504-EFM

DONALD ASH,
In his official capacity as Sheriff for
Wyandotte County, Kansas,
         *Defendant.*

**MEMORANDUM AND ORDER**

Plaintiffs Tyrell Jackson ("Plaintiff Jackson") and Randall Chapman ("Plaintiff Chapman"), individually and on behalf of others similarly situated, and Plaintiff Mabel Estes ("Plaintiff Estes"), on behalf of herself and on behalf of a class of persons similarly situated, assert claims against Defendant Donald Ash ("Defendant"), in his official capacity as Sheriff of Wyandotte County, Kansas, alleging violations of the First and Fourteenth Amendments to the United States Constitution. This matter comes before the Court on Plaintiffs' Motion for Class Certification (Doc. 3), filed September 30, 2013, pursuant to FED. R. CIV. P. 23. For the reasons set forth below, the Court grants the motion.

## I. Factual and Procedural Background

At all times relevant to this action, Defendant has been the Sheriff of Wyandotte County, Kansas. As such, Defendant is charged not only with the care and custody of the inmates of the Wyandotte County Adult Detention Center (the "Jail"), but also with creating and enforcing all policies and practices of the Jail. Located in Kansas City, Kansas, the Jail houses convicted prisoners, pretrial detainees, and civilly committed individuals. Its capacity, at any given time, is approximately 327 inmates. Plaintiffs Jackson and Chapman are current inmates of the Jail. Plaintiff Estes is a private citizen and the girlfriend of Plaintiff Chapman.

Effective on or about June 9, 2009, Defendant instituted a policy requiring all outgoing and incoming mail, with the exception of legal or privileged mail,[1] to be written on a postcard no larger than five inches by seven inches ("Postcard-Only Mail Policy" or "the Policy"). Prior to implementation of the Policy, Jail inmates were allowed to send correspondence in typical letter form, on multiple sheets of paper. Jail inmates enclosed all outgoing non-privileged correspondence in unsealed, open envelopes, and placed those envelopes in a mailbox within their Jail pod. An assigned Sheriff's deputy collected this non-privileged mail, screened its content for violations of the Jail's mail policy, sealed the envelopes, and placed the correspondence in the possession of the United States Postal Service. Likewise, prior to implementation of the Policy, outside correspondents were allowed to send correspondence to inmates in typical fashion, on one or more sheets of paper.

---

[1] Legal or privileged mail includes mail to and from: (1) attorneys; (2) courts; (3) officials of the confining authority; (4) state and local chief executive officers; (5) administrators of grievance systems; (6) members of the paroling authority; (7) civil officials; and (8) local, state, and federal governments. Pl. Compl., Doc. 1, at 3-4.

Under the Policy, Jail officials provide inmates with two postcards per week, as part of the inmates' weekly indigent supply packet. Inmates may purchase extra postcards from the Jail's commissary. The Policy allows for substantive content on only one side of the postcard; the front is reserved solely for the addressee's name and address, the sender's name and return address, and postage.

Plaintiffs Jackson, Chapman, and Estes now allege that the Policy not only limits the amount of correspondence inmates may generate and receive, but it also curtails the type of information contained within that correspondence. For example, Plaintiffs claim that the Policy restricts their ability to write about family and romantic relationships, health and medical treatment, finances, and legal matters, given that, when written on postcards, the information may be easily read by a whole host of people, both inside and outside the Jail. While Plaintiffs admit that they have other options for communication, including in-person visits and telephone calls, they argue that mail correspondence is the most economical and efficient means through which inmates and their chosen correspondents can stay in touch.

While Defendant admits that he is responsible for all Jail policies and practices, including the Postcard-Only Mail Policy, he denies that the Policy infringes upon Plaintiffs' First or Fourteenth Amendment rights.

### III. Analysis

#### A. Class Certification Under Rule 23

##### 1. General Standards Governing Class Certification

Whether to certify a class is a matter committed to the broad discretion of the trial court.[2] In exercising this discretion, the Court should err on the side of class certification, given its authority to later redefine or even decertify the class if necessary.[3] In deciding whether to certify, the Court must perform a "rigorous analysis" as to whether the proposed class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.[4] While Rule 23 does not provide the Court with the authority to conduct a preliminary inquiry into the *merits* of the lawsuit,[5] the Tenth Circuit has emphasized that the question of class certification necessarily involves considerations that are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action."[6] Therefore, it is the responsibility of the court to consider, "without passing judgment on whether plaintiffs will prevail on the merits," whether the requirements of Rule 23 are met.[7]

---

[2] *See Shook v. El Paso County*, 386 F.3d 963, 967 (10th Cir. 2004) (hereinafter *Shook I*).

[3] *Sibley v. Sprint Nextel Corp., et al.*, 254 F.R.D. 662, 670 (D. Kan. 2008) (citing *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968); *Heartland Commc'ns, Inc. v. Sprint Corp.*, 161 F.R.D. 111, 115 (D. Kan. 1995)); *see also* FED. R. CIV. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

[4] *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982); *see Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.*, 158 F.R.D. 681, 685 (D. Kan. 1994).

[5] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974); *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988); *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982).

[6] *Shook v. Bd. Of County Comm'rs*, 543 F.3d 597, 612 (10th Cir. 2008) (hereinafter *Shook II*) (quoting *Falcon*, 457 U.S. at 160); *see also J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1289 (10th Cir. 1999); *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988).

[7] *Shook II*, 543 F.3d at 612; *see Eisen*, 417 U.S. at 178 (stating that in determining propriety of a class action, the question is not whether plaintiffs state a cause of action or will prevail on the merits but whether the requirements of Rule 23 are met).

As the parties seeking class certification, Plaintiffs have the burden of demonstrating, under a strict burden of proof, that the requirements of Rule 23 are clearly satisfied.[8] To do so, Plaintiffs must establish the prerequisites of Rule 23(a) by demonstrating: (1) the class is so numerous that joinder of all members is impracticable; (2) questions of law or fact are common to the class; (3) the claims of the representative parties are typical of the claims of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[9] Upon meeting these requirements, Plaintiffs must demonstrate that the proposed class falls under one of the categories described in Rule 23(b).

**2. Class Definition**

Prior to determining whether a plaintiff has met the prerequisites of Rule 23(a), the Court must first address the proposed class definition.[10] "Defining the class is of critical importance because it identifies the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled . . . to . . . notice."[11] The definition must be "precise, objective, and presently ascertainable."[12] Here, Plaintiffs Jackson and Chapman seek certification of the following class: "all current and future detainees in the Wyandotte County Adult Detention Center who are subject to or affected by the Postcard-Only Mail Policy."[13] Plaintiff Estes seeks certification of a class comprised of "all current and future outside correspondents who wish to write letters to

---

[8] *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).

[9] FED. R. CIV. P. 23(a).

[10] *Eatinger v. BP Am. Prod. Co.*, 271 F.R.D. 253, 257-58 (D. Kan. 2010).

[11] *In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 444 (D. Kan. 2006) (citing *Manual for Complex Litigation*, § 21.222, at 270 (4th ed. 2005)).

[12] *Id.*

[13] Mot. For Class Cert., Doc 4, at 1. For ease of discussion, this class will be collectively referred to as the "Jail Inmate Class."

inmates in the Wyandotte County Adult Detention Center and who are subject to or affected by the Postcard-Only Mail Policy."[14]

Defendant sets forth no objection to Plaintiffs' proposed class definition. Therefore, the Court presumes that Defendant concedes this preliminary issue and finds that Plaintiffs' proposed class definitions are sufficient.

### 3. Prerequisites under Rule 23(a)

#### a. Numerosity

To establish that the proposed class is so numerous so as to make joinder impracticable, Plaintiffs must produce some evidence, or otherwise establish by reasonable estimate, the number of class members who may be involved.[15] While there is no set formula for determining whether a plaintiff meets this requirement, courts have found that classes as small as twenty members can satisfy the numerosity requirement, and a "good faith estimate of at least 50 members" is a sufficient size to maintain a class action.[16]

Here, Plaintiffs establish that the Jail holds, at any given time, approximately 327 inmates. While Plaintiffs acknowledge that the Jail's average daily population is in constant flux, they assert that "there can be little doubt that at least 50" of those inmates desire to write letters.[17] Plaintiffs further contend that the fluid nature of the proposed class, "and the inclusion in the classes of future inmates and their correspondents whose identities obviously cannot now

---

[14] Mot. for Class Cert., Doc. 4, at 2. For ease of discussion, this class will be collectively referred to as the "Outside Correspondent Class."

[15] *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978).

[16] *See id.*; *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 613 (D. Kan. 1995).

[17] Mot. for Class Cert., Doc. 4, at 4.

be ascertained, makes joinder of all class members not just impracticable, but literally impossible."[18]

Acknowledging the lack of a set formula for determining whether a plaintiff has satisfied the numerosity requirement, Defendant argues that Plaintiffs' proffered number of fifty affected inmates is nevertheless merely arbitrary and not based on any affirmative evidence. To this point, Defendant notes that the Policy has been in effect for more than four years and Plaintiffs can only affirmatively identify two inmates and one outside correspondent who feel that they have been harmed by the Policy. This, Defendant argues, is true despite Plaintiffs' assertion that "thousands of persons are arrested and booked annually as inmates and made subject" to the Policy.[19]

Despite Defendant's concern, this Court cannot help but agree with Plaintiffs. The number of persons affected by the Policy, at any given time, is, *at a minimum*, 327, the Jail's inmate capacity. This is true because the Policy *applies* to all inmates, not to mention their family, friends, and other chosen outside correspondents, regardless of whether these individuals *use* the Jail's mail system. What Plaintiffs allege is not just a potential constitutional violation against one or any given number of inmates, but rather a policy implemented against *all* inmates, such that all inmates face its allegedly chilling effects. Whether Plaintiffs can *prove* this effect is not for this Court to now say. Rather, this Court may only determine whether the number of inmates and outside correspondents who are subject to the Policy is so numerous as to render joinder impracticable. Other courts in this Circuit have held that "numerosity is met where . . . the class includes individuals who will become members in the future. As members *in futuro*,

---

[18] Mot. for Class Cert., Doc. 4, at 4.

[19] Opp. to Class Cert., Doc. 15, at 3 (citing Mot. for Class Cert., Doc. 4, at 4).

they are necessarily unidentifiable, and therefore joinder is clearly impracticable."[20] Based on the fluid and ever-changing nature of the putative classes, the Court finds the requirement of numerosity of Rule 23(a)(1) to be satisfied.

### b. Commonality

Rule 23(a)(2) requires Plaintiffs to show that there are questions of law or fact common to the class, or, in other words, that members of the putative class "possess the same interest and suffer the same injury."[21] Here, Plaintiffs allege that the commonality requirement is satisfied because all members of the Jail are housed in the same facility and are thus all subject to Defendant's Postcard-Only Mail Policy. As such, Plaintiffs set forth the following common material questions of fact and law:

1. the scope and nature of Defendant's Postcard-Only Mail Policy;

2. the scope, criteria, and process for invoking the alleged "privileged mail" exception to Defendant's Postcard-Only Mail Policy;

3. the scope and nature of Defendant's interests and/or justifications in instituting and maintaining the Postcard-Only Mail Policy;

4. whether the application of Defendant's Postcard-Only Mail Policy violates the rights of the members of the Jail Inmate Class under the First and Fourteenth Amendments to the United States Constitution; and

---

[20] *Skinner v. Uphoff*, 209 F.R.D. 484, 488 (D. Wyo. 2002) (citing *Phillips v. Joint Legislative Committee*, 637 F.2d 1014, 1022 (5th Cir. 1981) (holding that

> [t]he proper focus is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors. Here, neither party can even count how many black applicants there are, let alone identify all of them. Moreover, the alleged class includes future and deterred applicants, necessarily unidentifiable. In such a case the requirement of Rule 23(a)(1) is clearly met, for 'joinder of unknown individuals is certainly impracticable.

(quoting *Jack v. American Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir. 1974)).

[21] *Falcon*, 457 U.S. at 156.

5. whether the application of Defendant's Postcard-Only Mail Policy violates the rights of the members of the Outside Correspondents Class under the First and Fourteenth Amendments to the United States Constitution.[22]

In contrast, Defendant argues that this list alone does not satisfy the commonality requirement; rather, it is whether these common questions will generate common *answers* that prompt class certification. Defendant further alleges that the numerous dissimilarities within the proposed classes prevent Plaintiffs from meeting the commonality requirements as Plaintiffs cannot show: (1) that other proposed class members feel the same way Plaintiffs do about the Policy; and (2) that other proposed class members have the same difficulty with regard to travel and health concerns that Plaintiffs do.

While it is clear that each inmate may be affected differently by the Policy based on his or her communication preferences, it is also clear that a finding of commonality "does not require that class members share every factual and legal predicate. A single common issue of fact or law shared by the class will satisfy the requirement of Rule 23(a)(2)."[23] "A common question is one that can be resolved for each class member in a single hearing . . . ."[24] Given the liberal nature of the commonality requirement, the Court finds that Plaintiffs have demonstrated that this case revolves around a common question, namely, the constitutionality of the Postcard-Only Mail Policy. As such, the Court finds that Plaintiffs have satisfied the Rule 23(a)(2) commonality requirement.

---

[22] Mot. for Class Cert., Doc. 4, at 5-6.

[23] *Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 620 (D. Kan. 2008).

[24] *Id.* (quoting *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006)).

### c. Typicality

Rule 23(a)(3) requires that the representative plaintiffs possess the same interests and suffer the same injuries as the proposed class members.[25] "It is well established that differing fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative[s] and class members are based on the same legal or remedial theory."[26] The representative plaintiffs' interests need not be identical to those of the class members, but they must not be "significantly antagonistic" to the claims of the proposed class.[27]

Here, as Plaintiffs argue, the claims, legal theories, interests, and suffered injury of Plaintiffs and all members of the proposed classes are identical: Plaintiffs and the Proposed Plaintiffs are all currently subject to – or will be subject to – Defendant's Policy. Defendant alleges that Plaintiffs' individual fact situations, namely the inability of Plaintiffs' Jackson and Chapman's family and friends to visit, Plaintiff Chapman's mental health issues, and Plaintiff Estes' inability to regularly travel to the Jail, prevent a finding of typicality. However, the Tenth Circuit has stated that "every member of the class need not be in a situation identical to that of the named plaintiff to meet Rule 23(a)'s . . . typicality requirements.'"[28]

Therefore, the Court finds that Plaintiffs have satisfied the typicality requirement under Rule 23(a)(3).

---

[25] FED. R. CIV. P. 23(a)(3); *see also DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010).

[26] *Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678, 689 (D. Kan. 2009) (citing *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988)).

[27] *Olenhouse*, 136 F.R.D. at 680; *see also Stricklin*, 594 F.3d at 1198-99 ("Provided the named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality.").

[28] *DG*, 594 F.3d at 1195 (quoting *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982) (citing *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 340 (10th Cir. 1975)).

### d. Adequacy of Representation

Pursuant to Rule 23(a)(4), a representative plaintiff must show that he or she will fairly and adequately protect the interests of the class.[29] To satisfy this requirement, representative plaintiffs must be a member of the class they seek to represent and must show that: (1) their interests do not conflict with those of the class members; and (2) they will be able to prosecute the action vigorously through qualified counsel.[30] To defeat class certification, a conflict must be fundamental and go to the specific issues in controversy.[31] A fundamental conflict exists where some members of the class claim harm through a representative plaintiff's conduct that resulted in benefit to other class members.[32] Minor conflicts will not defeat class certification.[33]

Here, there is no evidence that Plaintiffs Jackson, Chapman, or Estes have any potential conflict with other members of the proposed classes. Defendant does not dispute that Plaintiffs' counsel is experienced and able to manage class litigation. In fact, Defendant does not contest this requirement at all. Accordingly, the Court finds that Plaintiffs have satisfied the requirement of Rule 23(a)(4) concerning adequacy of representation.

### 4. Prerequisites under Rule 23(b)

After satisfying the prerequisites under Rule 23(a), Plaintiffs must demonstrate that the proposed class action fits within one of the three categories described in Rule 23(b). In this case, Plaintiffs seek to proceed under Rule 23(b)(2), which states "[a] class action may be maintained

---

[29] FED. R. CIV. P. 23(a)(4).

[30] *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002).

[31] *Eatinger v. BP Am. Prod. Co.*, 271 F.R.D. 253, 260 (D. Kan. 2010).

[32] *Id.*

[33] *Id.*

if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The Tenth Circuit has interpreted this to "require that a class must be amenable to uniform group remedies."[34] The Circuit has further stated

> [a] class action may not be certified under Rule 23(b)(2) if relief specifically tailored to each class member would be necessary to correct the allegedly wrongful conduct of the defendant. So, if redressing the class members' injuries requires time-consuming inquiry into individual circumstances or characteristics of class members or groups of class members, the suit could become unmanageable and little value would be gained in proceeding as a class action . . . In short, under Rule 23(b)(2) the class members' injuries must be sufficiently similar that they can be addressed in a[] single injunction that need not differentiate between class members.[35]

Here, it is clear, despite Defendant's objection to the contrary, that Plaintiffs seek only *one* remedy on behalf of themselves and all Proposed Class Members: an order enjoining Defendant, his officers, agents, affiliates, subsidiaries, servants, employees, and successors from continuing the Postcard-Only Mail Policy. Therefore, the Court finds that Plaintiffs satisfy the requirements of Rule 23(b).

## B. Need for Class Certification

Defendant argues that class certification is unnecessary given that "[i]f the postcard policy is found to be unconstitutional and Plaintiffs are granted the requested relief, the proposed class will receive the same remedy regardless of whether class certification is granted or not."[36] While this Court is aware of the Tenth Circuit's prior holding that "class certification is

---

[34] *Shook II*, 543 F.3d at 604.

[35] *Id.*

[36] Opp. to Class Cert., Doc. 15, at 7.

unnecessary if all the class members will benefit from an injunction issued on behalf of the named plaintiffs,"[37] it is not convinced that the guideline is applicable here.

In a more recent case brought in the District of Colorado, the plaintiffs, much like Plaintiffs in the case at hand, were prisoners in the Boulder County Jail who sought, on behalf of themselves and a putative class of other inmates, to challenge a jail policy under which certain outgoing mail sent by prisoners was required to be written on postcards supplied by the jail.[38] The plaintiffs sought to certify a class defined as "all current and future prisoners in the Boulder County Jail who are subject to or affected by the defendants' postcard-only policy."[39] The defendants argued that class certification was unnecessary because, if the plaintiffs prevailed, "the benefits [would] inure to all prisoners."[40] The Colorado court disagreed, granting certification, and held as follows:

> Because the practice alleged to be occurring at the Boulder County Jail continues to affect members of the putative class who have a live stake in the controversy, if a class is certified, the claims are not mooted should the named Plaintiffs be transferred or released from the jail. Whereas an individual prisoner's claim for injunctive relief may become moot before the court can grant relief, class certification, where proper under Rule 23, ensures the presence of a continuing class of plaintiffs with a live dispute against prison authorities. Plaintiffs seek system-wide declaratory and injunctive relief that may be unattainable once Plaintiffs are released from the Boulder County Jail.[41]

---

[37] *Kan. Health Care Ass'n, Inc. v. Kan. Dept. of Social and Rehab. Servs.*, 31 F.3d 1536, 1548 (10th Cir. 1994) (citing *Everhart v. Bowen*, 853 F.2d 1532, 1538-39 n.6 (10th Cir. 1988) (*rev'd on other grounds* 494 U.S. 83 (1990)).

[38] *Clay v. Pelle*, 2011 U.S. Dist. LEXIS 27630 (D. Col. 2011); *see also Martinez v. Maketa*, 2011 U.S. Dist. LEXIS 60711 (D. Col. 2011) (certifying a class of all current and future inmates of the El Paso County Jail who were subject to the defendant's postcard-only mail policy).

[39] *Clay*, 2011 U.S. Dist. LEXIS at *2.

[40] *Id*. at *17-18.

[41] *Id*. at *19-20.

While class certification is surely not appropriate in every case in which it is sought, courts have generally held that claims involving an ever-changing jail or prison population are prime candidates for certification.[42] And, again, as stated above, when determining whether to certify a class, a court should err on the side of class certification, given its ability to later redefine or decertify the class.[43] Therefore, the Court finds, given Plaintiffs' satisfaction of the Rule 23 requirements, that certification is appropriate.

Based on the foregoing, the Court concludes that class certification is necessary and that Plaintiffs' proposed classes satisfy the requirements of Rule 23. Accordingly, the class will be certified with respect to Plaintiffs' constitutional claims. Plaintiffs Jackson and Chapman are appointed as class representatives for the Jail Inmate Class. Plaintiff Estes is appointed as class representative of the Outside Correspondent Class.

## C. Appointment of Counsel Under Rule 23(g)

"An order certifying a class must also appoint class counsel that will adequately represent the interests of the class."[44] In appointing class counsel, the court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in

---

[42] *See Clay*, 2011 U.S. Dist. LEXIS 27630 at *19-20 (agreeing with the plaintiffs that "given the rapid turnover in jail populations, class certification is essential if injunctive and declaratory relief is ever to be available."); *see also Shook I*, 386 F.3d at 972 ("In fact, many courts have found Rule 23(b)(2) well suited for cases where the composition of a class is not readily ascertainable; for instance, in a case where the plaintiffs attempt to bring suit on behalf of a shifting prison population.").

[43] *Sibley*, 254 F.R.D. at 670; *Heartland*, 161 F.R.D. at 115; *see also* FED. R. CIV. P. 23(c)(1)(C).

[44] *Amchem Prods.*, 521 U.S. at 615.

the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.[45]

Plaintiffs are presently represented by both the American Civil Liberties Union ("ACLU") Foundation of Kansas and the Social Justice Law Collective. Defendant does not oppose Plaintiffs' motion for their current attorneys to serve as co-lead class counsel. After reviewing the record, the Court is satisfied that Plaintiffs' attorneys meet the criteria of Rule 23(g) and will adequately represent the interests of the class as counsel. Plaintiffs' counsel has significant experience in handling class actions involving jail and prison inmates. Accordingly, the Court appoints Plaintiffs' current attorneys as co-lead class counsel for this action.

### D. Notice Pursuant to Rule 23(c)(2)(B)

Under Rule 23(c)(2)(A), when a court certifies a class under Rule 23(b)(2), the Court "*may* direct appropriate notice to the class."[46] Plaintiffs have not come forward with any potential notice options. Given that the proposed classes are, by Plaintiffs' own admission, constantly changing and rotating, the Court finds that notice in this case is impracticable, if not impossible. As such, no particular notice requirements are needed.

---

[45] FED. R. CIV. P. 23(g)(1)(A).

[46] FED. R. CIV. P. 23(c)(2)(A) (emphasis added)

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Class Certification of First and Fourteenth Amendment claims (Doc. 3) is hereby **GRANTED**.

**IT IS SO ORDERED**.

Dated this 25th day of March, 2014.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE