## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TYRELL JACKSON, et al.,

    *Plaintiffs,*

vs.

    Case No. 13-2504-EFM-JPO

DONALD ASH, in his official capacity as Sheriff for Wyandotte County, Kansas,

    *Defendant.*

## MEMORANDUM AND ORDER

Plaintiffs Tyrell Jackson, Randall Chapman, and Mable Estes filed this class action asserting claims under 42 U.S.C. § 1983 for declaratory and injunctive relief against Defendant Donald Ash, in his official capacity as Sheriff of Wyandotte County, Kansas. Plaintiffs, individually and respectively on behalf of other inmates or their outside correspondents similarly situated, allege that Defendant's postcard-only mail policy violates the First and Fourteenth Amendments to the United States Constitution. The Court preliminarily approved the parties' proposed Settlement Agreement and Consent Decree ("the Agreement") (Doc. 43-1). After notice to class members and a fairness hearing, the Court now considers the Agreement for final approval and entry. Because the Court finds that the Agreement is fair, reasonable, and adequate, it adopts and enters the Agreement.

### I. Factual and Procedural Background[1]

The parties notified the Court of settlement in October 2014. The following month, they submitted their proposed settlement terms to the Court in the Agreement. The Agreement identifies two settlement classes: (1) the "Inmate Correspondent Class,"[2] represented by Plaintiffs Jackson and Chapman, and (2) the "Outside Correspondent Class,"[3] represented by Plaintiff Estes.[4] The Agreement also contains two key provisions. First, the Agreement permits inmates to send and receive "envelope correspondence."[5] The Defendant Sheriff may restrict all incoming or outgoing envelope correspondence to one page, front and back. But, absent a valid safety concern, Defendant Sheriff is prohibited from limiting the volume of mail that inmates may send or receive. Second, the Agreement obligates Defendant Sheriff to provide certain correspondence materials to "indigent inmates."[6]

The Court reviewed and preliminarily approved these terms, with instruction to give notice to both settlement classes. Notice included a brief explanation of the lawsuit, a

---

[1] See the Court's March 25, 2014 Order (Doc. 26) for a more detailed description of the challenged mail policy and the Plaintiffs' objections. *Jackson v. Ash*, 2014 WL 1230225 (D. Kan. Mar. 25, 2014).

[2] The "Inmate Correspondent Class" contains "[a]ll current and future detainees in the Wyandotte County Adult Detention Center who are subject to or affected by the Postcard-Only Mail Policy." Settlement Agreement and Consent Decree, Doc. 43-1, p. 4.

[3] The "Outside Correspondent Class" contains "[a]ll current and future outside correspondents who wish to write letters to inmates in the Wyandotte County Adult Detention Center and who are subject to or affected by the Postcard-Only Mail Policy." Settlement Agreement and Consent Decree, Doc. 43-1, p. 4.

[4] Settlement Agreement and Consent Decree, Doc. 43-1, p. 4.

[5] The Agreement defines "envelope correspondence" to mean "a letter enclosed in an envelope. Envelope correspondence also may include paperwork, newspaper clippings, photographs, drawings, or other items to the extent permitted by Jail policy. Envelope correspondence does not include correspondence between detainees in the Detention Center or with detainees in Juvenile Detention." Settlement Agreement and Consent Decree, Doc. 43-1, p. 3.

[6] The Agreement defines "indigent inmate" as "a Jail inmate who has no funds ($0.00) in his or her inmate account that may be used for the purchase of commissary items, at any given time." Settlement Agreement and Consent Decree, Doc. 43-1, p. 4.

description of the proposed terms of the Agreement, and instruction for objecting. Members of the Inmate Correspondent Class received notice by a posting in each pod and visitation area. Inmates not housed within a dormitory setting received individual notice. Members of the Outside Correspondent Class received notice by publication in the *Kansas City Star*. Class members were given 60 days to object. The Court received two objections. Following the end of the objection period on February 3, 2015, the Court held a fairness hearing under Federal Rule of Civil Procedure 23(e)(2). The Court considered the submitted objections, with argument from the parties.

## II.     Analysis

### A. Settlement Approval Factors Support the Agreement

Federal Rule of Civil Procedure 23(e) authorizes a court to approve a class action settlement after notice, a hearing, and "on finding that [the settlement] is fair, reasonable, and adequate." Tenth Circuit courts determine whether a proposed settlement is fair, reasonable, and adequate by considering:

> (1) whether the proposed settlement was fairly and honestly negotiated;
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
> (4) the judgment of the parties that the settlement is fair and reasonable.[7]

These inquiries do not require the court to "conduct a foray into the wilderness in search of evidence that might undermine the conclusion that the settlement is fair."[8] But the court also

---

[7] *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002) (quoting *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), *abrogated on other grounds by Devlin v. Scardelletti*, 536 U.S. 1 (2002)).

[8] *Gottlieb*, 11 F.3d at 1015.

may not "rely solely upon the assertions of the proponents of the settlement as to what the evidence shows."[9] Rather, the court must undertake an independent analysis of "the evidence *before* it" to reach its conclusion.[10] The proponents of the settlement bear the burden to provide sufficient evidence to enable the court to conclude that the settlement is fair.[11]

The evidence presented this Court supports adoption of the Agreement. First, the Court is without reason to believe that the parties failed to fairly and honestly negotiate the Agreement's terms. Instead, the record demonstrates that the Agreement represents the cooperative and good faith result of arms'-length negotiation by skilled counsel. Both parties' counsel are familiar with litigating inmates' rights. The parties engaged in a time-consuming discovery process. They exchanged and reviewed hundreds of documents. They aggressively litigated the issue of certification. They also undertook several mediation sessions, spanning two months. Simply put, a review of this litigation demonstrates that the Agreement is the product, not of collusion or other impropriety, but of both parties' deliberate consideration of the action's merits and uncertainties. The Court is convinced that this factor favors approving the Agreement.

Second, the parties appropriately estimate that serious legal and factual uncertainties obscure the ultimate outcome of this action. Both parties possess valid legal arguments and a large body of favorable evidence. As both parties' counsel indicated at the February 3, 2015 fairness hearing, authority does not definitively resolve the constitutionality of Defendant's postcard-only policy. Neither the U.S. Supreme Court nor the Tenth Circuit has directly

---

[9] *Id.*

[10] *Id.*

[11] *Id.*

addressed the issue. Federal district courts also rarely directly address the issue.[12] Those courts that do evaluate the constitutionality of postcard-only policies remain divided, with a slight majority upholding postcard-only policies.[13] The unresolved nature of this legal issue seriously undermines any certainty regarding the outcome of this litigation. The second factor thus favors approving the Agreement.

Third, perhaps most significantly, the Agreement provides meaningful, immediate recovery to all class members that might otherwise be unrecoverable after a decision on the merits. The Agreement addresses *the* two core concerns of all class members—privacy and length of correspondence. Plaintiffs allege that the Defendant's postcard-only policy unconstitutionally limits the content and amount of their speech to the material that one can comfortably and legibly disclose on the exposed back of a postcard. Plaintiffs further allege that

---

[12] *See, e.g.*, *Fuller v. Powell*, 2015 WL 176543 (D. Ariz. Jan. 14, 2015) (dismissing pro se First Amendment challenge to postcard-only policy for failure to state a claim); *Salam v. Delaney*, 2014 WL 4961185 (W.D. Ark. Sept. 30, 2014) (adopting magistrate's decision to grant qualified immunity because law not clearly established that postcard-only policy amounts to deprivation of First Amendment right); *Underwood v. Manfre*, 2014 WL 67644 (M.D. Fla. Jan. 8, 2014) (approving class settlement that characterizes as unconstitutional and obligates repeal of postcard-only policy); *Pergande v. Trumbo*, 2013 WL 4083337 (D. Or. Aug. 7, 2013) (granting qualified immunity on pro se plaintiff's First Amendment challenge to postcard-only policy); *Allen v. Parnell*, 2013 WL 1333092 (W.D. Ky. Apr. 2, 2013) (dismissing pro se First Amendment challenge to postcard-only policy for failure to state a claim); *Rufus v. Chapman*, 2012 WL 4370269 (M.D. Ga. Aug. 10, 2012) (granting motion to dismiss pro se challenge to postcard-only policy because plaintiff failed to exhaust administrative remedies); *Jamison v. Darnell*, 2012 WL 1903045 (N.D. Fla. Apr. 24, 2012) (dismissing challenge to postcard-only policy for failure to state a claim); *Martinez v. Maketa*, 2011 WL 2222129 (D. Colo. June 7, 2011) (approving class settlement that asks court to permanently enjoin jail from enforcing postcard-only policy).

[13] The following eight cases validate postcard-only mail policies against First Amendment challenges: *Perkins v. Demeyo*, 2014 WL 5782769 (D. Nev. Nov. 6, 2014); *Prison Legal News v. Chapman*, __ F. Supp. 2d. __, 2014 WL 4247772 (M.D. Ga. Aug. 26, 2014); *Prison Legal News v. Babeu*, 933 F. Supp. 2d 1188 (D. Ariz. 2013); *Gamble v. Arpaio*, 2013 WL 5890730 (D. Ariz. Nov. 4, 2013); *Prison Legal News v. Bezotte*, 2013 WL 1316174 (E.D. Mich. Mar. 29, 2013); *Althouse v. Palm City Beach County Sheriff's Office*, 2013 WL 536072 (S.D. Fla. Feb. 12, 2013); *Daniels v. Harris*, 2012 WL 3901646 (M.D. Ga. Aug. 8, 2012); and *Covell v. Arpaio*, 662 F. Supp. 2d 1146 (D. Ariz. 2009).

Whereas the following four cases indicate that postcard-only mail policies may violate the First Amendment: *Cox v. Denning*, 2014 WL 4843951 (D. Kan. Sept. 29, 2014); *Prison Legal News v. County of Ventura*, 2014 WL 2736103 (C.D. Cal. June 16, 2014); *American Civil Liberties Union Fund of Michigan v. Livingston County*, 23 F. Supp. 3d 834 (E.D. Mich. 2014); and *Prison Legal News v. Columbia County*, 942 F. Supp. 2d 1068 (D. Or. 2013).

this policy has so effectively restricted their ability to communicate meaningfully that the policy interferes with their fundamental right to free speech. By permitting envelope correspondence of a single, two-sided page, the Agreement enhances the privacy and length of communications between class members. As such, the Plaintiffs acknowledge—and the Court agrees—that the additional privacy and length represent a substantial gain for the class members. This gain is augmented by the Agreement's qualified prohibition against restricting the content or volume of correspondence, as well as Defendant's undertaking to provide certain correspondence materials to indigent inmates.

Further, the Court finds that immediately securing these gains is worth forgoing the expense and uncertainty of further litigation. "The value of the settlement must be weighed against 'the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation.' "[14] For the reasons discussed under factor two, it is likely that ultimately resolving this case will require further motions, possibly trial, and almost certainly appeals. Not only will further litigation delay class members' relief for a significant period of time, but the ultimate resolution may conclusively deny them any relief. With a preponderance of the authority supporting the constitutionality of postcard-only policies, Plaintiffs' risk much in pursuing a decision on the merits. This risk is unmitigated, moreover, by the uncertain prospect of obtaining more meaningful relief. The Court is therefore satisfied that the third factor also favors approving the Agreement.

Fourth, both parties endorse the Agreement as justly resolving Plaintiffs' claim. In addition to saving both parties the expense and efforts of further litigation, the Agreement

---

[14] *In re Sprint Corp. ERISA Litigation*, 443 F. Supp. 2d 1249, 1261 (D. Kan. 2006) (*quoting Gottlieb*, 11 F.3d at 1015).

represents a compromise of both parties' interests. As discussed, the Agreement reforms the detention center's mail policy to accommodate class members' demands for more private and lengthy correspondence. But the Agreement also advances the detention center's security interests. The Agreement restricts envelope correspondence to a single page. Otherwise Defendant insists that the detention center cannot adequately screen the high volumes of mail for contraband and content without diverting necessary resources from more essential duties. By limiting additional resource demand, the one-page limit allegedly enables the detention center to satisfy its remaining safety obligations. The parties genuinely believe that these compromises confer fair and reasonable benefits to both parties that might be lost in the absence of settlement. Because the Court agrees, the fourth factor also supports the Agreement.

## B. Objections by Class Members Overruled

Finding that the evidence presented supports approval of the settlement, the Court now considers whether filed objections otherwise require disapproval. The Court received only two written objections, both from the Inmate Correspondent Class.[15] The submissions raise one relevant objection and other collateral objections.[16] The relevant objection opposes the

---

[15] The Court notes that it also may consider the number of objectors to determine the reasonableness of a settlement. Though not controlling, "a relatively small number of objectors can be taken as 'some indication that the class members as a group did not think the settlement was unfair.' " *Williams v. Sprint/United Mgmt. Co.*, 2007 WL 2694029, at *4 (D. Kan. Sept. 11, 2007) (quoting *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 506 n.4 (5th Cir. 1981)). Here, the Court recognizes the proportionally few objections to further support adopting the Agreement.

[16] The two objectors also raise collateral protests. In addition to challenging the economic fairness of the one-page limit, both objectors criticize the price of mail materials. The first objector insists that class members should recover any price they pay in excess of the fair market value of the postal service that they actually receive under the detention center's mail policies. The second objector complains that members of the Inmate Correspondent Class must purchase prestamped envelopes above market value and cannot purchase stamps individually. Also, the second objector expresses concern that legal mail may be screened and is delivered less quickly than nonprivileged mail.

These objections exceed the scope of Plaintiffs' action. They do not relate specifically to the postcard-only policy's effect on class members' free expression. They seek damages and other relief beyond the nominal and

Agreement's restriction of envelope correspondence length.  Specifically, the submissions protest the one-page limitation because a first-class stamp permits mail weighing up to one ounce or approximately five pages.  The objectors argue that they should be allowed to send and receive as many pages as the stamp entitles to delivery.  The parties acknowledge that the one-page restriction significantly limits inmates and their outside correspondents' ability to communicate.  Nevertheless, the parties argue that because the Agreement balances the detention center's legitimate security concerns with class members' speech and privacy interests, it is fair, reasonable, and adequate.

It is not this Court's duty to resolve the precise constitutional issue raised by these objections.[17]  The Court need only determine whether the settlement fairly handles the interests of all class members, particularly passive members of the class.[18]  The one-page restriction applies uniformly to all class members.  More importantly, the Court cannot say that the objection to page length outweighs the preceding factors favoring approval.  The objectors criticize the economic fairness of the one-page limit.  They argue that the one-page limit effectively compels them to pay comparatively more for less postal service. So they protest the Agreement.  But they express no concern that the one-page limit infringes their constitutional free speech rights.  They assert no constitutional interest in the otherwise available pages.  They do not complain that they cannot adequately express themselves in the limitless number of two-

---

equitable relief that Plaintiffs' request.  The Court is unaware of any precise constitutional harm caused by the criticized circumstances.  But, more importantly, the proposed settlement does address and thus does not bar objectors from independently bringing these claims.  Accordingly, the Court overrules these objections.

[17] "[S]ince '[t]he very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation,' the court must not turn the settlement hearing 'into a trial or a rehearsal of the trial.' " *Saylor v. Lindsley*, 456 F.2d 896, 904 (2nd Cir. 1972) (quotations omitted).

[18] *In re Sprint*, 443 F. Supp. 2d at 1255 (citations omitted).

sided, single-page letters that the Agreement permits. Succinctly, they do not challenge that the Agreement fairly, reasonably, or adequately vindicates their First Amendment rights. Considering the balance of interests that the uniformly applicable page limit serves, the deference traditionally afforded prison administrators' mail policies,[19] and that the only available authority addressing a one-page limit approves the length restriction,[20] the Court overrules these objections.

## C. The Agreement Complies with the Prison Litigation Reform Act

The Prison Litigation Reform Act requires that prior to approving a class settlement in a prison conditions case the court must find that the proposed relief "is narrowly drawn."[21] Relief is narrowly drawn if it "extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."[22] The Court finds that the Agreement corrects the alleged First Amendment violations caused by Defendant's postcard-only policy. The Court further finds that the Agreement provides relief through narrowly drawn means. Under the Agreement, envelope correspondence is a necessary means of relief. While intrusive—envelope correspondence generates more private, lengthy communications that require additional resources to review—envelope correspondence is

---

[19] "Acknowledging the expertise of these [prison] officials and that the judiciary is 'ill equipped' to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Thornburgh v. Abbott*, 490 U.S. 401, 407–08 (1989) (quoting *Procunier v. Martinez*, 416 U.S. 396, 404–05 (1974)).

[20] *See Babeu*, 933 F. Supp. 2d at 1202–03 (finding constitutional prison policy that limited incoming correspondence to postcard or single-page letter). The Court also notes the slight majority of courts that have permitted the more restrictive postcard-only mail policies to endure. *See* cases cited *supra* note 13.

[21] 18 U.S.C. §§ 3626(a)(1), (c)(1).

[22] *Id.*

minimally intrusive under the Agreement's terms.  The one-page limit and other safety-based qualifications on the right to send or receive mail permit relief without excessive burden to the detention center or its safety objectives.  The Agreement therefore complies with the Prison Litigation Reform Act.

To conclude, the Court finds that the Agreement proposed by the parties is fair, reasonable, and adequate.  For the preceding reasons, the Agreement is approved.  The Court adopts and enters the Agreement with instruction that Plaintiffs' claims be dismissed with prejudice.

**IT IS THEREFORE ORDERED** that the parties' Settlement Agreement and Consent Decree (Doc. 43-1) is hereby **APPROVED** under Federal Rule of Civil Procedure 23(e)(2) and **DIRECTED TO BE ENTERED**.

**IT IS FURTHER ORDERED** that according to Federal Rule of Civil Procedure 41(a)(2), Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

Dated this 20th day of February, 2015.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE